**WILDE & ASSOCIATES**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
bk@wildelaw.com

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

U.S. Bank, National Association
10-70522

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In Re: | BK Case No.: 10-25927-mkn |
|---|---|
| Jose Zepeda and Juana Maria Velasquez | Chapter 13 |
| Debtors. | |

## EX-PARTE APPLICATION FOR AN ORDER
## PURSUANT TO 362(4)(A)(i) and (ii)

U.S. Bank, National Association, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), requests from this Court an Order Confirming that the Automatic Stay of 11 U.S.C § 362 has not arisen with respect to the Debtors due to the multiple filings as evidenced below. This motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

1.      That on or about August 24, 2010, the above named Debtors filed this instant Chapter 13 Petition in Bankruptcy with the Court

2.    Secured Creditor is the current payee of a promissory note dated September 22, 2008 in the principal sum of $228,920.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 121 Purple Passion Avenue, North Las Vegas, NV 89032, and legally described as follows:

> LOT 125, OF FINAL MAP OF ALEXANDER AND N. FIFTH UNIT 1 (A COMMON INTEREST COMMUNITY), AS SHOWN BY MAP THEREOF ON FILE IN BOOK 119 OF PLATS, PAGE 10, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

("subject property" herein).

Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtors and that the Debtors are in default of the loan obligations.

3.    Prior to filing this case, the Debtors filed additional cases within a one year period as follows:

> (a) Case No. 10-18760, filed May 13, 2010 in the District of Nevada, which was Dismissed on July 12, 2010.
>
> (b) Case No. 10-11664, filed February 3, 2010 in the District of Nevada, which was Dismissed on April 5, 2010.
>
> (c) Case No. 09-34093, filed December 28, 2009 in the District of Nevada, which was Dismissed on May 6, 2010.

4.    The Court Docket for this case shows that Debtors have repeatedly filed several cases in addition to the cases shown in the foregoing paragraph, all of which have been dismissed.  A copy of the Court Docket for this case is attached hereto as Exhibit "A".

5.    Secured Creditor requests that the Court enter an Order confirming that there is no Automatic Stay affecting Secured Creditor with respect to the Debtors.

6.    Bankruptcy Code Section 362 (4)(A)(i) and (ii) states as follows:

> If a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case re-filed under section 707 (b), the stay under subsection (a) **shall not go into effect upon the filing of the later case; and**

**(ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;** *(emphasis added.)*

7.    As stated above, Debtors were Debtors in THREE prior cases pending within a preceding one year period of time prior to the institution of the present case, and that those prior cases were dismissed.

8.    Secured Creditor respectfully requests an order from the Court confirming that the Automatic Stay never arose as to Secured Creditor, and that Secured Creditor may proceed with collection on the note, including but not limited to foreclosure and an action to recover possession of the subject property described herein.

WHEREFORE, for all of the foregoing reasons, Secured Creditor, U.S. Bank, National Association, requests the Court to enter an Order confirming that the Automatic Stay has never arisen, with respect to the Debtors and the subject property described in this motion.

Respectfully submitted, this ___3___ day of ___Dec___ 2010.

WILDE & ASSOCIATES

By:___/s/Gregory L. Wilde, Esq___
    **GREGORY L. WILDE, ESQ.**
    Attorney for Secured Creditor
    212 South Jones Boulevard
    Las Vegas, Nevada 89107

20080926-0004578
Fee: $24.00    RPTT: $0.00
N/C Fee: $25.00
09/26/2008    15:12:27
T20080225459
Requestor:
  LANDAMERICA WEST
Debbie Conway        MSH
Clark County Recorder    Pgs: 11

Assessor's Parcel Number:
139-10-510-037
Return To:
U.S. BANK N.A.
1550 AMERICAN BLVD EAST
BLOOMINGTON MN 55425

Prepared By: JANINE WRAA
U.S. BANK N.A.
7560 SOUTH PIERCE STREET
LITTLETON, CO  80128

Recording Requested By:
U.S. BANK N.A.
7560 SOUTH PIERCE STREET
LITTLETON, CO  80128

——————————— [Space Above This Line For Recording Data] ———————————

State of Nevada

# DEED OF TRUST

| FHA Case No. |
| 332-470833-5-703 |

MIN  100021278848025255

THIS DEED OF TRUST ("Security Instrument") is made on **SEPTEMBER 22,2008**
The Grantor is
JOSE ZEPEDA VELASQUEZ AND JUANA MARIA VELASQUEZ , HUSBAND AND WIFE

("Borrower"). The trustee is  OLIVIA TODD,
2525 E. CAMELBACK ROAD SUITE 300, PHOENIX AZ 85016
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS.
U.S. BANK N.A.                                                    , ("Lender")

FHA Nevada Deed of Trust with MERS - 4/96
-4N(NV) (0510)        Amended 2/98
Page 1 of 9            Initials: _DU96_ .
VMP Mortgage Solutions, Inc.



Assessor's Parcel Number:
139-10-510-037
Return To:
U.S. BANK N.A.
1550 AMERICAN BLVD EAST
BLOOMINGTON MN 55425


Prepared By: JANINE WRAA
U.S. BANK N.A.
7560 SOUTH PIERCE STREET
LITTLETON, CO  80128


Recording Requested By:
U.S. BANK N.A.
7560 SOUTH PIERCE STREET
LITTLETON, CO  80128

---

——————————— [Space Above This Line For Recording Data] ———————————

State of Nevada

# DEED OF TRUST

FHA Case No.
332-470833-5-703

MIN  100021278848025255

THIS DEED OF TRUST ("Security Instrument") is made on **SEPTEMBER 22,2008**
The Grantor is
JOSE ZEPEDA VELASQUEZ AND JUANA MARIA VELASQUEZ , HUSBAND AND WIFE


("Borrower"). The trustee is  OLIVIA TODD,
2525 E. CAMELBACK ROAD SUITE 300, PHOENIX AZ 85016
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
U.S. BANK N.A.                                                                          , ("Lender")

FHA Nevada Deed of Trust with MERS - 4/96
VMP-4N(NV) (0510)      Amended 2/98
Page 1 of 9                Initials: _____
VMP Mortgage Solutions, Inc.

is organized and existing under the laws of **THE UNITED STATES OF AMERICA** ,
and whose address is **4801 FREDERICA STREET, OWENSBORO, KY 42301**

. Borrower owes Lender the principal sum of
**TWO HUNDRED TWENTY EIGHT THOUSAND NINE HUNDRED TWENTY AND   NO/100**

Dollars (U.S. $      **228,920.00**   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**OCTOBER 1,2038**           . This Security Instrument secures to Lender: (a) the repayment of the
debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power
of sale, the following described property located in                 **CLARK**
County, Nevada:
**ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF CLARK,
STATE OF NEVADA, DECRIBED AS FOLLOWS:**

**LOT 125, OF FINAL MAP OF ALEXANDER AND N. FIFTH UNIT 1 (A COMMON
INTEREST COMMUNITY), AS SHOWN BY MAP THEREOF ON FILE IN BOOK
119 OF PLAYS, PAGE 10, IN THE OFFICE OF THE COUNTY RECORDER OF
CLARK COUNTY, NEVADA.**

which has the address of  **121 PURPLE PASSION AVE**                          [Street]
**NORTH LAS VEGAS**                        [City], Nevada    **89032**    [Zip Code]
("Property Address");
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for
Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has
the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.
    Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of,
and interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each
monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum
for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or
ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In

 -4N(NV) (0510)              Page 2 of 9

Initials: ⟩ ᴅᴜᵧ̆6.

any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later

Initials: )DV2b.

4N(NV) (0510)                    Page 3 of 9

sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C.

Initials: $\int DV\, Q_R$

-4N(NV) (0510)

1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums



Initials: כ DリⳘ

secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: _J DV✗b_.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $     **500.00**     .

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Growing Equity Rider     ☐ Other [specify]
☒ Planned Unit Development Rider     ☐ Graduated Payment Rider

Initials: 

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____(Seal)
                                                                      -Borrower
                                     JOSE ZEPEDA VELASQUEZ

_____     _____(Seal)
                                                                      -Borrower
                                     JUANA MARIA VELASQUEZ

_____(Seal)     _____(Seal)
                    -Borrower                                          -Borrower

_____(Seal)     _____(Seal)
                    -Borrower                                          -Borrower

_____(Seal)     _____(Seal)
                    -Borrower                                          -Borrower

-4N(NV) (0510)                    Page 8 of 9

STATE OF NEVADA

COUNTY OF Clark

This instrument was acknowledged before me on September 23, 2008          by

JOSE ZEPEDA VELASQUEZ AND JUANA MARIA VELASQUEZ , HUSBAND AND WIFE

MARY QUACKENBUSH
Notary Public State of Nevada
No. 05-96415-1
My appt. exp. May 31, 2009

*Mary Quackenbush*
Mary Quackenbush

Mail Tax Statements To:

U.S. BANCORP SERVICE PROVIDERS LLC
4801 FREDERICA STREET
OWENSBORO, KY  42301

Initials: 2 D V 96

-4N(NV) (0510)                    Page 9 of 9

# PLANNED UNIT DEVELOPMENT RIDER

| FHA Case No. |
| 332-470833-5-703 |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **22ND** day of **SEPTEMBER 2008** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **U.S. BANK N.A.**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**121 PURPLE PASSION AVE, NORTH LAS VEGAS, NEVADA 89032**

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as **ALEXANDER AND N. FIFTH UNIT 1**

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned

**FHA Multistate PUD Rider - 10/95**
**-589U** (0402)
Page 1 of 2    Initials: J D V G b
VMP Mortgage Solutions, Inc.
(800)521-7291



and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
JOSE ZEPEDA VELASQUEZ          -Borrower

_____ (Seal)
JUANA MARIA VELASQUEZ          -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

-589U (0402)                   Page 2 of 2

US Bank NA
7560 South Pierce Street
Littleton, CO 80128

# NOTE

**Multistate**

FHA Case No.

---

**SEPTEMBER 22, 2008**
[Date]

**121 PURPLE PASSION AVE, NORTH LAS VEGAS, NEVADA 89032**
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means

**U.S. BANK N.A.**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

**TWO HUNDRED TWENTY EIGHT THOUSAND NINE HUNDRED TWENTY AND  NO/100**

Dollars (U.S. $      **228,920.00**      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   **SIX AND 375/1000**

percent (      **6.375**      %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) **Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **NOVEMBER 1**    **, 2008**      . Any principal and interest remaining on the first day of      **OCTOBER**
**2038**    , will be due on that date, which is called the "Maturity Date."

(B) **Place**

Payment shall be made at   **P.O. BOX 20005, OWENSBORO, KY 42304-0005**

or at such place as Lender may designate in writing by notice to Borrower.

(C) **Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $   **1,428.16**      . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) **Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

___ Graduated Payment Allonge    ___ Growing Equity Allonge    ___ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

---

**FHA Multistate Fixed Rate Note - 10/95**

-1R (C210) C1

VMP Mortgage Solutions (800)521-7291

Page 1 of 2                                                                Initials



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR AND NO/100** percent ( **4.00** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)    _____ (Seal)
JOSE ZEPEDA VELASQUEZ                -Borrower                                                    -Borrower

_____ (Seal)    _____ (Seal)
JUANA MARIA VELASQUEZ              -Borrower                                                    -Borrower

_____ (Seal)    _____ (Seal)
                                                    -Borrower                                                    -Borrower

Pay to the order of

Without Recourse                        (Seal)    _____ (Seal)
U.S. Bank N.A.                               -Borrower                                                    -Borrower

Teresa Bulver
Vice President

-1R (0210).01                              Page 2 of 2

# SIGNATURE/NAME AFFIDAVIT

DATE:     SEPTEMBER 22,2008

BORROWER:    JOSE ZEPEDA VELASQUEZ

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

| JOSE ZEPEDA VELASQUEZ | |
|---|---|
| (Print or Type Name) | Signature |

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

| J. Z. VELASQUEZ | |
|---|---|
| (Print or Type Name) | Signature |

| | |
|---|---|
| (Print or Type Name) | Signature |

| | |
|---|---|
| (Print or Type Name) | Signature |

| | |
|---|---|
| (Print or Type Name) | Signature |

and that
JOSE ZEPEDA VELASQUEZ                                                                    are one
and the same person.

State/Commonwealth of *Nevada*
County/Parish of *Clark*

Subscribed and sworn (affirmed) before me *Mary Quackenbush*
this        **23**        day of *September 2008*

*Mary Quackenbush*
Notary Public
State/Commonwealth of *Nevada*
Acting in the County/Parish of *Clark*

My Commission Expires: *05·31·09*

MARY QUACKENBUSH
Notary Public State of Nevada
No. 05-96415-1
My appt. exp. May 31, 2009

VMP -304 (0405)                VMP Mortgage Solutions, Inc. (800)521-7291                5/04

# SIGNATURE/NAME AFFIDAVIT

DATE:    SEPTEMBER 22, 2008

BORROWER:    JUANA MARIA VELASQUEZ

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

| JUANA MARIA VELASQUEZ | |
| --- | --- |
| (Print or Type Name) | Signature |

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

| J. M. VALESQUEZ | |
| --- | --- |
| (Print or Type Name) | Signature |

| | |
| --- | --- |
| (Print or Type Name) | Signature |

| | |
| --- | --- |
| (Print or Type Name) | Signature |

| | |
| --- | --- |
| (Print or Type Name) | Signature |

and that
JUANA MARIA VELASQUEZ                                                             are one
and the same person.

State/Commonwealth of *Nevada*
County/Parish of *Clark*

Subscribed and sworn (affirmed) before me *Mary Quackenbush*
this    *23*    day of    *September* *2008*

*Mary Quackenbush*

> MARY QUACKENBUSH
> Notary Public State of Nevada
> No. 05-96415-1
> My appt. exp. May 31, 2009

Notary Public
State/Commonwealth of *Nevada*
Acting in the County/Parish of *Clark*

My Commission Expires: *05·31·09*

VMP -304 (0405)                VMP Mortgage Solutions, Inc. (800)521-7291                                5/04

**DebtEd, BAPCPA**

### U.S. Bankruptcy Court
### District of Nevada (Las Vegas)
### Bankruptcy Petition #: 10-25927-mkn

*Date filed:*  08/24/2010

*Assigned to:* MIKE K. NAKAGAWA
Chapter 13
Voluntary
Asset

| | |
|---|---|
| *Debtor*<br>**JOSE ZEPEDA**<br>121 PURPLE PASSION AVE<br>NORTH LAS VEGAS, NV 89032<br>(702) 685-5513<br>SSN / ITIN: xxx-xx-7296 | represented by **JOSE ZEPEDA**<br>PRO SE |
| *Joint Debtor*<br>**JUANA MARIA VELASQUEZ**<br>121 PURPLE PASSION AVE<br>NORTH LAS VEGAS, NV 89032<br>SSN / ITIN: xxx-xx-6264 | represented by **JUANA MARIA VELASQUEZ**<br>PRO SE |

*Trustee*
**KATHLEEN A. LEAVITT**
201 LAS VEGAS BLVD., SO. #200
LAS VEGAS, NV 89101
(702) 853-0700

| Filing Date | # | Docket Text |
|---|---|---|
| 08/24/2010 | 1 | Chapter 13 Voluntary Petition. Fee Amount $274.00. Filed by JOSE ZEPEDA, JUANA VELASQUEZ (ccc) (Entered: 08/24/2010) |
| 08/24/2010 | 2 | Statement of Social Security Number(s). This document contains sensitive information and cannot be viewed by the public. Filed by JUANA VELASQUEZ, JOSE ZEPEDA (ccc) (Entered: 08/24/2010) |
| | | Meeting of Creditors and Notice of Appointment of Trustee KATHLEEN A. LEAVITT. 341 meeting to be held on 10/12/2010 at 08:30 AM at 341s - Foley Bldg,Rm 1500. Confirmation hearing to be held on 11/18/2010 at 01:30 PM at |

EXHIBIT "A"

| 08/24/2010 | 3 | Foley Bldg, Third Floor. Objection to Dischargeability of Certain Debts due by 12/13/2010. Chapter 13 Proof of Claims due by 01/10/2011. (Entered: 08/24/2010) |
|---|---|---|
| 08/24/2010 | 4 | Receipt Number-Filing Fee 197262, Fee Amount $274.00. (Related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor JOSE ZEPEDA, Joint Debtor JUANA VELASQUEZ) (ccc) (Entered: 08/24/2010) |
| 08/24/2010 | 5 | Set Deficient Filing Deadlines. Incomplete Filings due by 9/7/2010. Summary of schedules due by 9/7/2010. Schedules A-J due by 9/7/2010. Declaration Re: Schedules due by 9/7/2010. Statement of Financial Affairs due by 9/7/2010. Chapter 13 Plan due by 9/7/2010. Chapter 13 Means Test Form 22C Due 9/7/2010 Bankruptcy Petition Preparer Signature due 9/7/2010. BPP Disclosure of Compensation due 9/7/2010. (ccc) (Entered: 08/24/2010) |
| 08/24/2010 | 6 | Notice of Incomplete and/or Deficient Filing. (ccc) (Entered: 08/24/2010) |
| 08/25/2010 | 7 | Previous Dismissal. Chapter: 13. Case Number: 09-29072. Date Filed: 10/09/2009. District: NV. Date of Previous Dismissal: 12/23/2009. (dcw) (Entered: 08/25/2010) |
| 08/25/2010 | 8 | Previous Dismissal. Chapter: 13. Case Number: 09-34093. Date Filed: 12/28/2009. District: NV. Date of Previous Dismissal: 05/06/2010. (dcw) (Entered: 08/25/2010) |
| 08/25/2010 | 9 | Previous Dismissal. Chapter: 13. Case Number: 10-11664. Date Filed: 02/03/2010. District: NV. Date of Previous Dismissal: 04/05/2010. (dcw) (Entered: 08/25/2010) |
| 08/25/2010 | 10 | Previous Dismissal. Chapter: 13. Case Number: 10-18760. Date Filed: 05/13/2010. District: NV. Date of Previous Dismissal: 07/12/2010. (dcw) (Entered: 08/25/2010) |
| 08/25/2010 | 11 | Order Reassigning Case to Bankruptcy Judge MIKE K. NAKAGAWA. (ccc) (Entered: 08/25/2010) |
| 08/26/2010 | 12 | BNC Certificate of Mailing (Related document(s) 3 Meeting of Creditors Chapter 13 (BNC)) No. of Notices: 1. Service Date 08/26/2010. (Admin.) (Entered: 08/26/2010) |
| 08/26/2010 | 13 | BNC Certificate of Mailing. (Related document(s) 6 Incomplete and/or Deficient Filing-Ch 13 (BNC)) No. of Notices: 1. Service Date 08/26/2010. (Admin.) (Entered: 08/26/2010) |

| 09/02/2010 | 14 | Previous Dismissal. Chapter: 13. Case Number: 09-29072. Date Filed: 10/9/09. District: NV. Date of Previous Dismissal: 12/23/09. (anc) (Entered: 09/02/2010) |
| 09/02/2010 | 15 | Previous Dismissal. Chapter: 13. Case Number: 09-34093. Date Filed: 12/28/09. District: NV. Date of Previous Dismissal: 5/6/10. (anc) (Entered: 09/02/2010) |
| 09/02/2010 | 16 | Previous Dismissal. Chapter: 13. Case Number: 10-11664. Date Filed: 2/3/10. District: NV. Date of Previous Dismissal: 4/5/10. (anc) (Entered: 09/02/2010) |
| 09/02/2010 | 17 | Previous Dismissal. Chapter: 13. Case Number: 10-18760. Date Filed: 5/13/10. District: NV. Date of Previous Dismissal: 7/12/10. (anc) (Entered: 09/02/2010) |
| 09/03/2010 | 18 | Creditor Request for Notices with Certificate of Service Filed by ACE C VAN PATTEN on behalf of GMAC MORTGAGE, LLC (VAN PATTEN, ACE) (Entered: 09/03/2010) |
| 10/02/2010 | 19 | Request for Special Notice Filed by RECOVERY MANAGEMENT SYSTEMS CORPORATION (SINGH, RAMESHWAR) (Entered: 10/02/2010) |
| 10/13/2010 | 20 | 341 Meeting Off Calendar (LEAVITT (jy), KATHLEEN) (Entered: 10/13/2010) |
| 10/24/2010 | 21 | Notice of Requirement to File Certificate of Completion of Instructional Course Concerning Financial Management. (Entered: 10/24/2010) |
| 10/27/2010 | 22 | BNC Certificate of Mailing. (Related document(s) 21 Notice of Requirement to File Certification of Completion of Instructional Course Concerning Financial Management (BNC)) No. of Notices: 1. Service Date 10/27/2010. (Admin.) (Entered: 10/27/2010) |
| 11/18/2010 | 23 | **Virtual Minute Entry in reference to hearing On: 11/18/2010 Subject:** MEETING OF CREDITORS AND APPOINTMENT OF TRUSTEE KATHLEEN A. LEAVITT. 341 MEETING. **Appearances:** SARAH SMITH, ATTORNEY FOR KATHLEEN LEAVITT, TRUSTEE. **Proceedings:** (vCal Hearing ID (511252)).(related document(s) 3 ) Confirmation hearing to be held on 12/30/2010 at 01:30 PM at Foley Bldg.Third Floor.(cnh) (Entered: 11/19/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/03/2010 08:13:06 | | | |
| **PACER Login:** | bd0050 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 10-25927-mkn Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

WILDE & ASSOCIATES
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787
bk@wildelaw.com,

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

U.S. Bank, National Association
10-70522

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In Re: | Bk Case No.: 10-25927-mkn |
|---|---|
| Jose Zepeda and Juana Maria Velasquez | Chapter 13 |
| Debtors. | |

## CERTIFICATE OF SERVICE OF EX-PARTE
## APPLICATION FOR AN ORDER PURSUANT TO 362(4)(A)(i) and (ii)

1. On  12|3|2010   I served the following documents(s):

    Ex-Parte Application for an Order Pursuant to 362 (4)(A)(i) and (ii)

2. I served the above-named document(s) by the following means to the persons as listed below:

    X  **a. ECF System**

        Kathleen A Leavitt
        courtsecf3@las13.com
        Trustee

X  **b. United States mail, postage fully prepaid:**

> Jose Zepeda and Juana Maria Velasquez
> 121 Purple Passion Avenue
> North Las Vegas, NV 89032
> Debtors
>
> JACQUE A. GRUBER
> Ace Van Patten
> PITE DUNCAN, LLP
> 4375 Jutland Drive, Suite 200
> P.O. Box 17933
> San Diego, CA 92177-0933
>
> GE Money Bank
> c/o Recovery Management Systems Corp.
> Attn: Managing Agent
> Attn: Ramesh Singh
> 25 SE 2nd Avenue, Suite 1120
> Miami, FL 33131-1605

☐  **c. Personal Service** (List persons and addresses. Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

☐    1.    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney's office with a clerk or other person in charge, or if no one is charge by leaving the document(s) in a conspicuous place in the office.

**N/A**

☐    2.    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there. N/A

☐  **d. By direct mail**

Based upon the written assignment of the parties to accept service by email or a court order. I caused the document(s) to be sent to the persons at the mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐  **e. By fax transmission**

Based upon the written assignment of the parties to accept service by fax transmission or a court order. I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐  **f. By messenger**

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this __3rd__ day of __Dec__ 2010.

By: _Jamie Miller_